UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| LUCIANO VARGAS PADILLA, TDCJ # 01892209, | § § § | |
| Petitioner, | § | |
| VS. | § | CIVIL ACTION NO. 3:17-CV-227 |
| LORIE DAVIS, Director, Texas Department of Criminal Justice, Correctional Institutions Division, | § § § § | |
| Respondent. | § § | |

## MEMORANDUM OPINION AND ORDER

State inmate Luciano Vargas Padilla (TDCJ #01892209) has filed a *pro se* petition

for a writ of habeas corpus under 28 U.S.C. § 2254. The Respondent has filed a motion

for summary judgment (Dkt. 12) accompanied by the relevant state-court records (Dkt.

13). Padilla has responded (Dkt. 17). After reviewing all of the pleadings, the record, and

the applicable law, the Court concludes that Padilla's petition is time-barred.

## I.    BACKGROUND

In August of 2013, after a jury trial, Padilla was convicted in state court in

Brazoria County of one count of "illegal barter/expenditure of property/finance"—

essentially, of helping to finance the purchase of cocaine (Dkt. 13-26 at pp. 5–6). At

Padilla's trial, the State's evidence consisted of testimony showing that a confidential

informant working with the Brazoria County Sheriff's Department had successfully

organized a drug deal between the informant and three other men, one of whom was

Padilla. The four men met at a Burger King, where Padilla and his accomplices showed

the confidential informant $28,000.00 earmarked for the purchase of a kilogram of cocaine that the confidential informant was claiming to sell. Immediately after the meeting, the informant signaled law enforcement officers, who pulled over the car in which Padilla and his accomplices were riding; the officers found the $28,000.00 underneath Padilla's seat. Padilla took the stand and testified that he was only present at the drug deal because his two acquaintances had duped him by claiming that they were taking him to meet someone who wanted to hire him for a welding job (Dkt. 13-9 at pp. 160–66). The jury rejected this explanation and found that Padilla was indeed one of the cocaine buyers (Dkt. 13-9 at p. 207). The trial court entered judgment on the verdict on October 30, 2013 (Dkt. 13-26 at p. 6).

Padilla appealed his conviction, and the First Court of Appeals of Texas affirmed the trial court (Dkt. 13-4). The Texas Court of Criminal Appeals ("TCCA") refused Padilla's petition for discretionary review on May 13, 2015 (Dkt. 13-1). On March 21, 2016, Padilla filed a state habeas petition (Dkt. 13-26 at p. 31).[1] The TCCA denied habeas relief on June 29, 2016 (Dkt. 13-25). Padilla filed this federal habeas petition on February 27, 2017 (Dkt. 1 at p. 9).

## II.   THE ONE-YEAR STATUTE OF LIMITATIONS

This federal habeas petition is subject to the one-year limitations period found in 28 U.S.C. § 2244(d). *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998). Section 2244(d) provides as follows:

---

[1] Padilla's state and federal habeas applications were deemed filed on the dates on which he deposited those applications into the prison mailing system. *Richards v. Thaler*, 710 F.3d 573, 576–79 (5th Cir. 2013).

(d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –

    (A)    the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

    (B)    the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

    (C)    the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

    (D)    the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2)    The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

Essentially, subsections (B), (C), and (D) outline exceptions to the general rule, set forth in subsection (A), that a federal habeas petition must be filed within one year after the petitioner's conviction becomes final. *Flanagan*, 154 F.3d at 198. Section (d)(2) tolls limitations during the pendency of a properly filed state habeas petition. *Id.*

When a habeas petitioner has, as Padilla did, pursued relief on direct appeal through his state's highest court, his conviction becomes final ninety days after the highest court's judgment is entered, which is the expiration of time for filing a petition

for writ of certiorari with the United States Supreme Court. *Butler v. Cain*, 533 F.3d 314, 317 (5th Cir. 2008). In Padilla's case, that date was August 11, 2015, ninety days after the Texas Court of Criminal Appeals refused his petition for discretionary review. Absent tolling, the statute of limitations barred suit on August 11, 2016. Padilla filed this federal habeas petition on February 27, 2017—200 days late. Padilla's state habeas petition tolled limitations while it was pending, but it was only pending for 100 days, leaving Padilla 100 days short of the amount of tolling he needs to make his petition timely. In his response to the State's motion for summary judgment, Padilla argues that he is actually innocent of the crime for which he was convicted and that, alternatively, he is entitled to equitable tolling.

## III.  **ACTUAL INNOCENCE**

Padilla first claims that he is entitled to have his habeas petition heard despite the time bar because he can provide newly discovered evidence of his innocence (Dkt. 17 at p. 5). That evidence takes the form of an affidavit sworn out by one of the other cocaine buyers, Fernando Renteria, in which Renteria testifies that Padilla "was totally oblivious" to the fact that he was involved in a drug deal and that Renteria and the other buyer "were using [Padilla]" to finance the purchase without Padilla's knowledge (Dkt. 17-1 at pp. 2–3). Renteria, who pled guilty to his role in the drug deal and received a five-year prison sentence in March of 2013, did not testify at Padilla's trial; and his affidavit is dated April 15, 2016, which was nearly three years after Padilla's trial (Dkt. 2 at p. 21; Dkt. 13-19 at p. 5). *See* Brazoria County Criminal Case Number 69077 (Renteria's criminal case).

A prisoner who has filed an untimely federal habeas application can overcome the one-year statute of limitations with a convincing showing of "actual innocence." *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1928 (2013). The actual-innocence exception described in *McQuiggin* is grounded in the miscarriage-of-justice exception—*Id.* at 1932—which is a narrow exception applicable only in extraordinary cases. *Calderon v. Thompson*, 523 U.S. 538, 559 (1998). Thus, tenable actual-innocence claims are "rare[.]" *McQuiggin*, 133 S. Ct. at 1928. "The gateway should open only when a petition presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error." *Id.* at 1936 (quotation marks omitted; quoting *Schlup v. Delo*, 115 S. Ct. 851, 861 (1995)). For the purposes of the miscarriage-of-justice analysis, "'actual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). As the Fifth Circuit has further explained, "actual innocence" means "factual" as opposed to "legal" innocence, with "legal" innocence meaning that a constitutional violation by itself requires reversal and "factual" innocence meaning that the person actually did not commit the crime. *Johnson v. Hargett*, 978 F.2d 855, 859–60 (5th Cir. 1992); *see also Calderon*, 523 U.S. at 559 ("The miscarriage of justice exception is concerned with actual as compared to legal innocence.") (internal brackets and quotation marks omitted). At bottom, the *McQuiggin* exception only "applies to a severely confined category: cases in which new evidence shows it is more likely than not that no reasonable juror would have convicted the petitioner." *McQuiggin*, 133 S. Ct. at 1933 (quotation marks and brackets omitted).

Padilla's evidence does not meet the *McQuiggin* standard. That Padilla was present at the drug purchase is indisputable, and the confidential informant testified that Padilla was actively engaged in the deal—Padilla and Renteria both told the informant that, if the initial purchase went well and they were happy with the quality of the cocaine, they might "start buying 5 or 10 kilos every week" (Dkt. 13-9 at pp. 156–57). The confidential informant wore a wire, and the conversation was taped (Dkt. 13-9 at pp. 154–55, 173–77). Padilla handled the packet containing the $28,000.00 when the money was shown to the informant, and when the buyers' car was pulled over that money was found underneath Padilla's seat (Dkt. 13-9 at pp. 98, 165). Moreover, "little confidence" can be placed in an affidavit exculpating an accomplice when the affiant "had nothing whatsoever to lose by incriminating himself"—and here Renteria swore out his affidavit years after he had already pled guilty to, and been sentenced for, his role in the drug deal. *See Drew v. Scott*, 28 F.3d 460, 463 (5th Cir. 1994); *see also United States v. Vergara*, 714 F.2d 21, 23 (5th Cir. 1983) (noting that the "belated exculpation" of one of two convicted accomplices by the other "is not unusual"); *McQuiggin*, 133 S. Ct. at 1395 (pointing out that a court may consider how the timing of an affidavit and the likely credibility of the affiant bear on the probable reliability of evidence of actual innocence). There was no apparent motive for the confidential informant to misrepresent Padilla's role in the transaction, which, again, was captured on audiotape.[2] There was also no

---

[2] Padilla implies that there was a financial motive for the informant to implicate him (Dkt. 17 at p. 6). However, the informant testified that he is compensated based on the amount of money seized (Dkt. 13-9 at pp. 146–47). There is no evidence that the informant's compensation hinged

apparent motive for the other two cocaine buyers to involve Padilla in the meeting if Padilla was not knowingly helping to finance the purchase. Under the circumstances, Renteria's affidavit does not constitute evidence of innocence so strong that the Court cannot have confidence in the outcome of Padilla's trial unless the Court is also satisfied that the trial was free of nonharmless constitutional error.

## IV.   EQUITABLE TOLLING

Padilla also argues that he is entitled to equitable tolling (Dkt. 17 at p. 9). A habeas petitioner is entitled to equitable tolling if he shows: (1) that he has been pursuing his rights diligently; and (2) that some extraordinary circumstance stood in his way and prevented timely filing. *Holland v. Florida*, 560 U.S. 631, 649 (2010). The determination of whether equitable tolling is appropriate is, of course, governed by rules and precedent; but it often must be made on a case-by-case basis. *Id.* at 649–50. Courts must be mindful that "tolling is only available in exceptional circumstances." *Phillips v. Donnelly*, 216 F.3d 508, 511 (5th Cir. 2000) (quotation marks omitted). The burden is on the petitioner to demonstrate that equitable tolling should apply. *Turner v. Johnson*, 177 F.3d 390, 392 (5th Cir. 1999).

The Court is not satisfied that Padilla has met the *Holland* standard. Although the *Holland* standard does not require the petitioner to show "maximum feasible diligence," *Holland*, 560 U.S. at 653 (quotation marks omitted), a petitioner hoping to obtain the benefit of equitable tolling undoubtedly has to move with at least some urgency, as courts

---

in any way on the number of people arrested, or on ensuring that Padilla was arrested specifically.

will not equitably toll limitations for litigants who "sleep on their rights." *Fisher v. Johnson*, 174 F.3d 710, 715 (5th Cir. 1999) (quotation marks omitted). In order for equitable tolling to be appropriate, "[a] petitioner's failure to satisfy the statute of limitations must result from external factors beyond his control; delays of the petitioner's own making do not qualify." *In re Wilson*, 442 F.3d 872, 875 (5th Cir. 2006). In Padilla's case, the Court is disinclined to toll the limitations period because Padilla waited for eight months to file this federal habeas petition after the TCCA denied his state habeas petition. The Fifth Circuit has held at least three times that a delay of shorter than eight months between the denial of state post-conviction relief and the filing of a federal habeas petition precluded a finding of the diligence necessary to obtain equitable tolling. *Coleman v Johnson*, 184 F.3d 398, 403 (5th Cir. 1999) (six months); *Koumjian v. Thaler*, 484 Fed. App'x 966, 969–70 (5th Cir. 2012) (four and a half months); *Melancon v Kaylo*, 259 F.3d 401, 408 (5th Cir. 2001) (four months).

Padilla provides two reasons for his delay in filing this petition: (1) transfers to federal custody pursuant to immigration proceedings that have blocked Padilla's access to his legal materials; and (2) Padilla's poor grasp of the English language (Dkt. 17 at pp. 9–10). Padilla alleges that he has been transferred to federal custody "over twenty times" and that such a transfer "can last anywhere from seven to ten days" (Dkt. 17 at pp. 9–10). Padilla claims that he has no access to his legal materials, except for materials related to his immigration proceedings, during these transfers (Dkt. 17 at pp. 9–10). Given the eight-month time lag between the denial of Padilla's state habeas petition and the filing of this federal petition, these allegations are insufficient to justify equitable tolling. Padilla's

claim that he cannot read English well amounts to a claim that illiteracy has prevented him from familiarizing himself with the law; and mere unfamiliarity with the law, even if it results from illiteracy, is not enough to warrant equitable tolling. *Turner*, 177 F.3d at 392. And Padilla's allegations of frequent transfers fail to establish either when exactly he was denied access to his legal materials or, more importantly, how that denial of access stood in his way and prevented timely filing. *Cf. Wilson*, 442 F.3d at 875 ("In other words, if [the petitioner] unreasonably waited until the very last day of the one-year period . . . to assert his claim, then despite his last-minute efforts to file . . . his failure to meet his one-year deadline is his own fault and he is not entitled to equitable tolling."). Padilla's federal habeas petition raises four grounds for relief, all of which were previously drafted and presented to the TCCA (as required by 28 U.S.C. § 2254(b)) via Padilla's direct appeal, his state habeas petition, or both. Padilla does not show why he was able to get his state habeas petition—which raised thirteen grounds for relief (Dkt. 13-26 at pp. 13–26)—on file within seven months of the date on which limitations began to run but then needed eight months to file this federal petition after the TCCA denied habeas relief.

The Court will dismiss Padilla's federal habeas petition as time-barred.

## V.    CERTIFICATE OF APPEALABILITY

The federal habeas corpus petition filed in this case is governed by the Antiterrorism and Effective Death Penalty Act (the "AEDPA"), codified as amended at 28 U.S.C. § 2253. Therefore, a certificate of appealability is required before an appeal may proceed. *See Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *see also Hallmark v.*

*Johnson*, 118 F.3d 1073, 1076 (5th Cir. 1997) (noting that actions filed under either 28 U.S.C. § 2254 or § 2255 require a certificate of appealability).

A certificate of appealability will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires a petitioner to demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Under the controlling standard, a petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El*, 537 U.S. at 336. Where denial of relief is based on procedural grounds, the petitioner must show not only that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," but also that they "would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

A district court may deny a certificate of appealability, *sua sponte*, without requiring further briefing or argument. *Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). After careful review of the pleadings and the applicable law, the Court concludes that reasonable jurists would not find its assessment and ruling debatable or wrong. Because the petitioner does not otherwise allege facts showing that his claims could be resolved in a different manner, a certificate of appealability will not issue in this case.

## VI. CONCLUSION

Based on the foregoing, the Court **ORDERS** as follows:

1. The Respondent's motion for summary judgment (Dkt. 12) is **GRANTED**. All other pending motions are **DENIED** as moot.

2. The habeas corpus petition is **DENIED**, and this case is **DISMISSED** with prejudice.

3. A certificate of appealability is **DENIED**.

The Clerk shall provide a copy of this order to the parties.

SIGNED at Galveston, Texas, on ___February 21___, 2018.


_____
GEORGE C. HANKS, JR.
UNITED STATES DISTRICT JUDGE